Curia, per

Butler, J.
The paper upon which the indictment in this case was founded, would not be intelligible without the statement of extraneous circumstances. Tt is made up of references and allusions, the true meaning of which could not be reached, even by conjecture, without explanations. Every indictment must contain and set forth all the ingredients of an offence ; and no omission in such statement can be supplied by evidence or innuendo. Evidence may sustain, and an innuendo may indicate, by mere reference, what has been before sufficiently set forth. But the one cannot be introduced, or the other employed, without previous statements, either in a full colloquium, or by explicit averments. In cases of libel, these will not be necessary, where the publication itself expresses all that is to be understood. As where A B, writes of and concerning O D, and makes an imputation, in express terms, of some crime or infamous offence. In such case the author of the paper, the person or subject spoken of, and the object of the paper, will sufficiently appear. The following language of O. J. DeGrey, in the case of the King vs. Horne, Cowp. 683, recognizes and explains what I have been saying: “It may happen that a writing may be so expressed, and in such clear and unambiguous terms, as that it may amount, of itself, to a libel. In such case the court wants no circumstances to make it clearer than it is of itself j and, *185 therefore, all foreign circumstances introduced in the record would be only matter of supererogation. But if the terms of the writing are general, or ironical, or spoken by way of reference or allusion, although every man who reads such a writing may put the same construction on it, it is by understanding some thing not expressed in direct terms; and it being a matter of crime, there wants something more. It ought to receive a judicial sense, whether the application is just; and the fact, or the nature of the fact, on which that depends, is to be determined by a jury. But a jury cannot take cognizance of it, unless it appears on the record, which it cannot do without an averment.” In the case before the court, it does not appear from the paper itself, who was its author ; or the persons of, and concerning whom, it was written ; or the purpose for which it was written. Each of these should have been explicitly averred, as facts for the consideration and determination of the jury. Has this been done, so as to give the court a judicial understanding of the matter ? The first has been done, that is, that the defendant published the paper. But as to the other two essential particulars, there are no sufficient averments in the indictment. In the last part of the paper, the words “had laced their spencers “the lord 'was called on for a blessing “the business was quashed,” occur, and it is said that under these terms, the prosecutors were referred to. If so, there should have been an explicit averment, that the defendant, under and by the use of these covert terms, wrote of and concerning Allen Spencer, John Lord, and Robert H. Quash,‘jun. This would, then, have presented a fact for the jury, whether these were the persons thus insidiously alluded to. If the defendant meant to designate the said individuals, the next question occurs, what did he intend to impute to them ? The complaint is that he intended to fix upon them some offensive imputation, calculated to bring them into disgrace and contempt, or subject them to ridicule. If so, what was that imputation? Was it that the prosecutor and others had formed a club to indulge themselves in the silly frolic of assuming the character of dogs, and chasing goats or cats in a certain street 1 — or that the defendant had some other covert mean *186 ing not expressed by him'.2 And as it respects the other part of the paper, in which the club is represented as returning and assembling at a certain place — the French, was it the intention of the defendant to say that the prosecutors there gave themselves up to vulgar carousal, by drinking certain potations in the paper described % If so, the meaning and purpose of the defendant should have been averred; and, perhaps, to have made the averment more intelligible, it would have been as well, by way of mere introduction, or colloquium, to have set out a description of the places and persons alluded to in the publication. The gist of the charge is that the defendant maliciously made a publication of and concerning the prosecutors, under certain ambiguous terms, marked in italics, and thereby intended to impute to them certain contemptible and degrading practices. By setting out the paper, and averring that the defendant was the author of it; that under the ambiguous terms referred to, the prosecutors were meant; and that defendant intended to charge them with the practices therein described and specified, distinct issues of fact would have been made. These matters are not thus set forth by averment or colloquium. But by way of recital, it is noted, in brackets, that Spencer, Lord and Quash, were the persons whose names “were alluded to,” in the words, “laced their Spencers “the Lord was called on for a biessmg “the business was Quashed.” No such allegation had been made before, in that form ; and what is thus said is, evidently, by way of innuendo, and forms a part of the recital. It cannot be claimed as fulfilling the place of an averment. It is essentially an innuendo in its characer, and as such, cannot be enlarged, so as to embrace or express any thing of a distinct and substantive kind. The office of an innuendo is entirely indicatory; intended to point out and refer to what has been before stated ; and for that reason, no evidence can be introduced to support or explain an innuendo, it being used as a mere convenience, in composition, to relieve the mind from confusion as to names and other matters that have been frequently repeated, and, sometimes, have the same sound. The difference between an averment and an innuendo, will appear from this illustration— when a paper has been ironically written of another, the *187 indictment should set out the paper as it is, with an averment that it contains a latent and different, meaning from its literal purport, and then the alleged different meaning should be precisely set forth. An- innuendo, afterwards, may refer, in a running commentary, to the previously explained meaning, as often as it occurs in recital. As where one is called a white man, when the meaning was that he had colored blood in him. Here the averment would explain the meaning, and the innuendo would call the attention to the true meaning, when there was an occasion to mention it. For authority on these questions, I refer particularly to the full and satisfactory judgments in the cases of The King vs. Horne, and Van Vechtin vs. Hopkins, 5 J. R. 211.
If the necessary averments had been made as to the character of the paper before us — presenting questions, pro-perlyrnade, for the’decision of the jury, I will not undertake to say that such a paper was' not libellous, and that there was not sufficient evidence to support the charge.
The essential ingredient of a libel is, that it should be a malicious publication; and where the obvious design and tendency of such a publication is to bring the subject of it into contempt and ridicule, it will, nevertheless, be a libel, although it imputes no crime liable to be punished with infamy. The latter might be more aggravated and heinous, and have a more probable tendency to lead to a breach of the peace. But the former would be referred to the same general character of the offence. The effect of a libellous publication might be produced by an insidious and malignant pun — exposing the faults of an individual in a contemptible point of view, as well as by scurrilous abuse, in which the most offensive epithets are used. As to what is or is not a libel, it cannot be indicated by certain. description or uniform definition. I mean such a libel as would be the subject of a public prosecution. It is probable that we would not have interfered with the verdict in this case, if it had been rendered on a sufficient indictment. But as it is, we cannot suffer the conviction to stand. The motion to arrest the judgment is granted.
RichardsON, O’Neall, Evans and Wardlaw, JJ, concurred. Frost, J. dissented.